UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH MATCHKO, | |
| Plaintiff, | CIVIL ACTION NO. 3:17-cv-01329 |
| v. | (SAPORITO, M.J.) |
| KOST TIRE DISTRIBUTORS, INC., | |
| Defendant. | |

## MEMORANDUM

This is a counselled age-related employment discrimination case. The plaintiff, Joseph Matchko, claims that the defendant, Kost Tire Distributors, Inc., violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951 *et seq.* This matter was assigned to the undersigned United States magistrate judge upon consent of the parties. The defendant has moved for summary judgment. (Doc. 37.) The defendant has filed its statement of material facts and a brief in support of the motion as well as a reply brief. (Doc. 38; Doc. 39; Doc. 48.) The plaintiff has filed a counter-statement of material facts and a brief in opposition. (Doc. 44; Doc. 45.) For the reasons set forth below,

we will deny the motion.

I. **STATEMENT OF FACTS**

The defendant initially hired Matchko as a driver on September 14, 2009. During Matchko's career, the defendant promoted him on several occasions with corresponding increases in pay. On May 10, 2013, Matchko was promoted to District Manager, a position which did not previously exist and which was created for him, at the rate of $14.00 per hour. He held that position until December 2015, at which time he was laid-off, at the age of 73. The parties dispute the reasons for the layoff. Matchko contends that he was informed that he was being laid-off because of lack of work, while the defendant contends that Matchko was laid-off because he was not performing the duties and responsibilities of his job *and* because business was slow. Despite Matchko's layoff and the defendant's compound explanation for his layoff of slow business and failure to perform, it advertised for applicants to fill the District Manager position when Matchko was laid-off. (Doc. 38-4, at 57.) Nevertheless, it was the defendant's expressed intention to take him back if business improved. (Doc. 38-3, at 10; Doc. 38-4, at 57.) Matchko contends that, in a telephone conference on July 26, 2016, with Erwin Kost, Jr., he was

informed that his employment had been terminated. The defendant has denied this allegation.

In support of its position that Matchko was not performing his duties and responsibilities, the defendant produced testimony that Matchko: (1) did not provide oversight or help with customer service; (2) failed to assist regarding the amelioration of issues; (3) did not perform well in helping with telephone calls at the store; (4) did not give employee training; and (5) did not have a positive impact upon sales. Matchko disputes these allegations.

Despite the defendant's denials that it permanently terminated Matchko's employment, it did not bring him back after the layoff. Further, the defendant ultimately replaced him with another individual who was older than forty, but younger than Matchko.

In May 2016, Matchko applied for a position with the defendant for an assistant store manager/service manager which was advertised in an online advertisement. He was not hired for the position, nor did the defendant respond to his job application.

On July 27, 2017, Matchko filed his complaint in this Court alleging a violation of the ADEA for his termination and the failure to rehire him.

He filed an amended complaint on July 27, 2018, which included two counts alleging ADEA violations and two counts alleging PHRA violations. The defendant's motion for summary judgment has been briefed by the parties and it is ripe for disposition.

## II.    LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion,"

and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52. Thus, in evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant

or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## III.   DISCUSSION

We evaluate Matchko's age discrimination claims using the burden-shifting framework under *McDonnell-Douglas v. Green*, 411 U.S. 792 (1972).  *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192-93 (3d Cir. 2015).  We note that the state PHRA is generally interpreted as being consistent with the ADEA.  *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015); *Kelly v. Drexel*, 94 F.3d 102, 105 (3d Cir. 1996).

The ADEA provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

29 U.S.C. § 623(a)(1). The ADEA protects those who are at least forty years old. 29 U.S.C. § 631(a); *Thomas v. Pocono Mountain Sch. Dist.*, No. 10-1946, 2011 WL 2471532, at \*3 (M.D. Pa. June 21, 2011). To establish a *prima facie* case of age discrimination, a plaintiff must show that he: "(1) was a member of the protected class, *i.e.*, was over 40, (2) was qualified for the position, (3) suffered an adverse employment decision, and (4) ultimately was replaced by a person sufficiently younger to infer an inference of age discrimination." *Monaco v. Am. Gen. Assurance Co.*, 357 F.3d 296, 300 (3d Cir. 2004); *see also Trelenberg v.* 21st *Century Ins. & Fin. Serv., Inc.*, No. 12-3603, 2013 WL 3914468 (E.D. Pa. July 30, 2013). To establish a *prima facie* case at summary judgment, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case." *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001).

The defendant seeks summary judgment on these claims on the basis that Matchko is unable to satisfy the second and fourth prongs, namely that he was qualified for the position of District Manager and that he was replaced by an employee sufficiently younger or that the defendant retained someone similarly situated to perform the functions

7

of District Manager. Thus, prongs one and three are not in dispute, and Matchko has satisfied these elements of his *prima facie* case.

### *a. Qualified for the Position*

As to the second prong, the defendant argues that Matchko has not demonstrated that he was qualified for the position of District Manager. The defendant maintains that that a District Manager is expected to ensure that stores were training employees in sales, ensure a more consistent customer experience throughout stores, meet weekly sales goals, increase sales and make the stores more profitable, and address and correct issues in stores. (Doc. 39, at 16.) The defendant concedes that Matchko travelled to different Kost stores and identified issues therein, but the defendant contends that Matchko, despite direction to do so, did not follow-up and correct the issues, nor did he use his authority as District Manager to correct the issues. (*Id.*) Further, the defendant argues that Matchko did not increase sales in stores which required Ken Kielar to assume the duties of District Manager while Matchko was transferred to a floating manager role, where he answered telephone calls. (*Id.*) These are the facts the defendant relies upon in support of its contention that Matchko was not qualified for the position of District

8

Manager.

The determination of whether an employee is qualified for a particular job for purposes of proving a *prima facie* case is by an objective standard. *Sempier v. Johnson & Higgins*, 45 F. 3d 724, 729 (3d Cir. 1995). "[W]hile objective job qualifications should be considered in evaluating the plaintiff's *prima facie* case, the question of whether an employee possesses a subjective quality, such as leadership or management skill, is better left to" consideration of whether the employer's nondiscriminatory reason for discharge is pretext. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990). Matchko points us to his objective qualifications, i.e. Matchko performed the job of District Manager, a job created for him, for more than two years; as of the date of his promotion, he had been a Kost employee for five years; and Kost's general manager, Ken Kielar, testified that Matchko was selected as District Manager because of his experience and his past experience at Motorworld, "where he ran several of the dealerships there." (Doc. 44 ¶9; Doc. 38-4, at 10:5-17; Doc. 45, at 8.) In considering the evidence in the light most favorable to Matchko as the nonmoving party, as we must, Matchko had the necessary objective experience to qualify for and hold

the position of District Manager for Kost. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989) ("[t]hus, [plaintiff's] satisfactory performance of duties over a long period of time leading to a promotion clearly established his qualifications for the job."); *Hugh v. Butler Cty. Family YMCA,* 418 F.3d 265, 268 (3d Cir. 2005) (one's "satisfactory performance of duties, leading to a promotion, does establish a plaintiff's qualification for a job"). Thus, we find that Matchko has satisfied this prong of the *prima facie* case.

### *b. Replacement by a Younger Worker*

The defendant argues that Matchko, age 73, was not replaced as District Manager by someone sufficiently younger, nor that an employee similarly situated was retained to perform the duties of that position. (Doc. 39, at 17.) Kost contends that the evidence submitted showed that after he was laid-off, Matchko's duties were distributed among Erwin Kost, Jr. (age 42), Ken Kieler (age 50), Dan Getter (age 53), all of whom were existing employees of the defendant, and Erwin Kost, Sr. (age 72), the president of Kost. Mr. Getter eventually became Matchko's permanent replacement in 2017.

In its brief in support of its motion for summary judgment, the

defendant contends that Matchko's layoff was due to a reduction-in-force where there was no replacement, requiring Matchko to show that the defendant retained someone similarly situated to him who was sufficiently younger. (Doc. 39, at 14.) However, in its reply brief, the defendant asserts that in addition to Matchko's layoff because of a reduction-in-force, his termination was due to his failure to perform his duties and responsibilities. (Doc. 48, at 11.) The defendant never provided Matchko with written notice of termination. (Doc. 17 ¶33; Doc. 21 ¶33.) In either event, the defendant does not clearly articulate whether its motion should be analyzed as a reduction-in-force case or a typical termination case.

Where there is a discharge, evidence that the plaintiff was ultimately replaced by a person sufficiently younger may be sufficient to support an inference of discrimination. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 n.5 (3d Cir. 1998). Where an employee is terminated during a reduction-in-force, the fourth element becomes "whether the employer retained employees not within the protected class." *Smith v. Thomas Jefferson Univ.*, No. 05-2834, 2006 WL 1887984, at *3 (E.D. Pa. June 29, 2006). "In a reduction-in-force case, the persons

11

outside the protected class are those employees who are "similarly situated," that is, they work in the same area in approximately the same position. *See Anderson v. Consol. Rail Corp.,* 297 F.3d 242, 249–50 (3d Cir. 2002). "A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company." *Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir. 1990)). A reduction-in-force typically involves the layoff of many employees at once. *Bearley v. Friendly Ice Cream Corp.,* 322 F. Supp. 2d 563, 575 (M.D. Pa. 2004). A person is not replaced "when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Id.* ("A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.") (quoting *Barnes*, 896 F.2d at 1465).

Here, to the extent that the defendant is defending this action on a reduction-in-force theory, it is undisputed that there were eleven other employees laid-off or terminated at the time of Matchko's layoff, including younger employees. (Doc. 38 ¶40; Doc. 44 ¶40.) Matchko admits that the position of District Manager remained vacant until 2017

when Dan Getter, age 53, was hired for the position. (Doc. 38 ¶¶41, 43; Doc. 44 ¶¶41, 43.) During the approximate two-year period where the District Manager position was vacant, several employees/officers of the defendant filled-in to perform those duties. (Doc. 38 ¶42; Doc. 44 ¶42.) Even though Matchko's "duties may have been redistributed to younger employees, such redistribution of duties among current employees does not, without more, constitute a 'replacement' of a former employee." *Scalamogna v. Steel Valley Ambulance*, No. 2:13-cv-545 2015 WL 1038141 at *4 (W.D. Pa. Mar. 10, 2015). Here, the facts are in dispute whether Matchko was laid-off as part of a company reduction-in-force or terminated for poor performance. The summary judgment evidence does not foreclose that Matchko's separation from employment was pretextual.

To the extent that the defendant is defending this action based on a discharge, our decision is informed by the Supreme Court's unanimous decision in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996) where the Court reasoned:

> As the very name "prima facie case" suggests, there must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a "legally

13

> mandatory, rebuttable presumption," [] The element of replacement by someone under 40 fails this requirement. . . . The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age.*

(citations omitted) (emphasis in original).

The defendant argues that, even assuming Matchko established a prima facie case, he cannot rebut the defendant's legitimate nondiscriminatory reasons for its decision to terminate him, namely, that Matchko did not perform his duties and responsibilities of his job. In support of this reason, the defendant contends that Matchko, despite direction to do so, did not follow-up and correct the issues identified in stores, nor did he use his authority as District Manager to correct the issues. Further, the defendant argues that Matchko did not increase sales in stores which required Ken Kielar to assume the duties of District Manager while Matchko was transferred to a floating manager role, where he answered telephone calls. Matchko disputes that his position was changed to floating manager, but rather he filled-in during periods of staff shortages while maintaining his role as District Manager.

Matchko must point to some evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated

14

legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a ... determinative cause of the employer's action." *Stanziale v. Jargowsky,* 200 F.3d 101, 105 (3d Cir. 2000); *Brewer v. Quaker State Oil Ref. Corp.,* 72 F.3d 326, 331 (3d Cir. 1995).

A plaintiff can establish the first prong by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir.1994) (quoting *Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 531 (3d Cir. 1992)). Here, the summary judgment evidence demonstrates that Matchko was never disciplined nor did he receive any negative performance evaluations during his tenure as District Manager. On the employer's notice of application filed with the Commonwealth of Pennsylvania, Bureau of Unemployment Compensation, the defendant noted that Matchko's separation from employment was due to "lack of work." (Doc. 44-5, at 2.) In addition, he did not receive any written notice informing him that his employment was terminated. To the contrary, at the time of his layoff, it was represented to him that he would be called

15

back when business improved. The defendant has failed to produce any corroborating written evidence of admonishments to Matchko concerning his alleged deficient work performance, despite testimony that some Kost employees took notes of the dialogue at these meetings, claiming that they were lost with the computer on which they were stored. The defendant's reasons for Matchko's separation from employment have been inconsistent.

To satisfy the second prong, the plaintiff must point to evidence "that proves . . . discrimination in the same way that critical facts are generally proved—based solely on the natural probative force of the evidence." *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1111 (3d Cir. 1997). The plaintiff can establish the second prong by showing that the employer in the past subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not within his class more favorably, or that the employer discriminated against other members of his protected class. *Fuentes,* 32 F.3d at 765. Here, Matchko points to certain remarks that were made to him by employees and officers of the defendant, based on which a reasonable factfinder could find the reasons given for his layoff/termination are not

worthy of belief. For example, Matchko points to disparaging remarks based on his age from the defendant's employees. Matchko references a comment made by Erwin Kost, Sr., asking why Matchko walked "bent over" all the time. He also references comments made by Ken Keiler that Matchko was getting "slower and slower" and he was "not an asset anymore."

In considering whether stray remarks, such as the comments made by Kost, Sr. and Keiler, are probative of discrimination, the Third Circuit has considered the following factors: "(1) the relationship of the speaker to the employee and within the corporate hierarchy; (2) the temporal proximity of the statement to the adverse employment decision; and (3) the purpose and content of the statement." *Parker v. Verizon Pa., Inc.,* 309 Fed. App'x 551, 558–559 (3d Cir. 2009) (quoting *Ryder v. Westinghouse Elec. Corp.,* 128 F.3d 128, 133 (3d Cir. 1997)); *see also Keller,* 130 F.3d at 1112. "Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Fuentes,* 32 F.3d at 767 (quoting *Ezold,* 983 F.2d at 545). Here, the summary judgment evidence does not provide the temporal

proximity of the comments to the alleged adverse action, nor does the evidence delineate the context within which the statements were made. Despite this, we find that genuine issues of material fact exist which compel the court to deny the defendant's summary judgment motion.

An appropriate order follows.

***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: March 29, 2021